# HARRIS COUNTY FLOOD CONTROL DISTRICT, Petitioner,

v.

## Frank MIHELICH, Respondent.

### No. B–4854.

Supreme Court of Texas.

July 9, 1975.

Joe Resweber, County Atty., Anthony D. Sheppard, Asst. County Atty., Houston, for petitioner.

Kronzer, Abraham & Watkins, Nick C. Nichols and W. James Kronzer, Houston, for respondent.

DANIEL, Justice.

The questions here are whether a flood control district is liable for damages in a tort action for personal injuries proximately caused by the negligence of its employee, and if so, whether payment of a judgment therefor may be required from maintenance taxes levied by the district. Plaintiff, Frank Mihelich, sustained personal injuries when a Harris County Flood Control District employee, in the course and scope of his employment, negligently drove one of the District's trucks into plaintiff's car. The trial court, based upon jury findings, rendered judgment for plaintiff in the sum of approximately $41,000. The court of civil appeals affirmed. 512 S.W.2d 393. For reasons other than those stated by the court of civil appeals, we affirm.

The District's single point in the court of civil appeals and in this Court is that the Texas Tort Claims Act violates Article XVI, Section 59, of the Texas Constitution, Vernon's Ann.St., and is void insofar as the Flood Control District is concerned. Section 59 of Article XVI is the provision of our Constitution adopted in 1917 to encourage conservation and development of natural resources through formation of conservation and reclamation districts. The par-

ties agree that the Harris County Flood Control District was created in accordance with this constitutional authority and that the District is subject to the terms thereof. Subsection (c) of Section 59 of Article XVI, provides:

"(c) The Legislature shall authorize all such indebtedness as may be necessary to provide all improvements and the maintenance thereof requisite to the achievement of the purposes of this amendment, and all such indebtedness may be evidenced by bonds of such conservation and reclamation districts, to be issued under such regulations as may be prescribed by law and shall also, authorize the levy and collection within such districts of all such taxes, equitably distributed, as may be necessary for the payment of the interest and the creation of a sinking fund for the payment of such bonds; and also for the maintenance of such districts and improvements, and such indebtedness shall be a lien upon the property assessed for the payment thereof; *provided the Legislature shall not* authorize the issuance of any bonds or *provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property tax-paying voters of such district and the proposition adopted.*" [Emphasis added.]

Districts formed in accordance with Section 59 of Article XVI have been recognized to be governmental agencies and bodies politic and corporate, "governed by the law applicable to counties," with the same immunities from tort actions as were enjoyed by the State and its counties prior to enactment of the Tort Claims Act of 1969. *Bennett v. Brown County Water Improvement District No. 1,* 153 Tex. 599, 272 S.W.2d 498 (1954); *Brown County Water Improvement District No. 1 v. Austin Mill & Grain Co.,* 135 Tex. 140, 138 S.W.2d 523 (1940). For a general discussion of governmental immuni-

ty and the terms of the Texas Tort Claims Act, see Greenhill and Murto, *Governmental Immunity,* 49 Tex.L.Rev. (1971) 462, and Bickley, *Local Government,* 24 SW.L.J. (1970) 199–202.

The Texas Tort Claims Act, Article 6252–19,[1] effective January 1, 1970, provided a limited waiver of former sovereign immunities of the State and all of its agencies and units of government, specifically including conservation and reclamation districts. After defining "officer, agent, or employee" as meaning "every person who is in the paid service of any unit of government by competent authority . . . whether elective or appointive . . . ," the Act provides in part as follows:

"Sec. 3. Each unit of government in the state shall be liable for money damages for personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment, other than motor-driven equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state, under circumstances where such officer or employee would be personally liable to the claimant in accordance with the law of this state, or death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state. Such liability is subject to the exceptions contained herein, and it shall not extend to punitive or exemplary damages. Liability hereunder shall be limited to $100,000 per person and $300,000 for any single occurrence for bodily injury or death.

---

1. All statutory references are to Vernon's Ann.Civil Statutes, unless otherwise noted.

"Sec. 4. To the extent of such liability created by Section 3, immunity of the sovereign to suit, as heretofore recognized and practiced in the State of Texas with reference to units of government, is hereby expressly waived and abolished, and permission is hereby granted by the Legislature to all claimants to bring suit against the State of Texas, or any and all other units of government covered by this Act, for all claims arising hereunder.

" . . .

"Sec. 9. . . . all units of government are hereby expressly authorized to purchase policies of insurance providing protection for such units of government, their officers, agents and employees against claims brought under the provisions of this Act, . . ..

" . . .

"Sec. 11. Judgments recovered against units of government pursuant to the provisions of this Act shall be enforced in the same manner and to the same extent as judgments are now enforced against such units of government under the statutes and law of Texas; and no additional methods of collecting judgments are granted by this Act. . . . It is expressly provided, however, that judgments under this Act becoming final during any fiscal year need not be paid by such unit of government until the following fiscal year except to the extent that they may be payable by an insurance carrier. For the payment of any final judgment obtained under the provisions of this Act, a unit of government not fully covered by liability insurance is hereby authorized to levy an ad valorem tax, the rate of which, if found by the unit of government to be necessary, may exceed any legal limit otherwise applicable except as may be imposed by the Constitution of the State of Texas. In the event that judgments arising under the provisions of this Act become final

against a unit of government in any one fiscal year in an aggregate amount, exclusive of insurance coverage, if any, in excess of one percent of the budgeted tax funds, exclusive of general obligation debt service requirements, of such unit of government for such fiscal year, then such unit of government may pay such judgments over a period of not more than five years in equal annual installments and shall pay interest on the unpaid balance at the rate provided by law."

■ The District contends that the Tort Claims Act is void in its entirety as to this District, because it violates that part of Section 59, Article XVI of the Texas Constitution which prohibits the Legislature from providing for any indebtedness against a reclamation district unless such proposition shall first be submitted and adopted by the voters of the district. We think the Act can be reconciled with the Constitution. Indeed, the District's arguments are relevant only to Section 11, which concerns the collection of judgments. Even if the collecting and taxing provisions are unconstitutional when applied to a conservation and reclamation district whose voters have not approved a maintenance and operations tax, it would not affect the remainder of the Act or forego its application to those districts whose voters have approved a tax from which such judgments can be paid. Governmental immunity from personal injury suits is not provided by the Texas Constitution; it is court-made law; and we hold that the Legislature acted within its constitutional authority in providing for the limited waiver of immunity as set forth in Article 6252–19.

This is not to say that the portion of Section 11 of the Act relating to collection of judgments and levying of taxes is not violative of the final proviso of Section 59(c) of Article XVI of the Texas Constitution, if applied to a conservation and recla-

mation district in which the voters have not adopted a maintenance tax. For instance, if the Harris County Flood Control District had not levied a maintenance tax after approval by its voters, we would agree that the District could not be ordered by the Legislature or the courts to levy a tax for the payment of the judgment in this case. Under such circumstances, it is doubtful that there would have been occasion for plaintiff's injuries or for the Tort Claims Act to apply. As to personal injuries, the Act is limited to damages proximately caused by negligent or wrongful acts or omissions of a person "who is in the paid service of any unit of government . . ." If a district is not engaged in its own construction work or operation and maintenance activities through paid officers or employees, it is difficult to perceive how it might be responsible for personal injuries to anyone under the Tort Claims Act.

These were not the circumstances of the present case. On the contrary, the Harris County Flood Control District was engaged in day-to-day maintenance and operations which involved paid employees, trucks, and other equipment, all or part of which was being financed by a maintenance tax approved by the voters of the District. Therefore, the question here is whether judgments obtained in accordance with the Texas Tort Claims Act are payable from maintenance taxes levied by the District in accordance with Article XVI, Section 59 of the Texas Constitution. We hold that they are. In this holding, we find support in the briefs of both parties that judgments under the Tort Claims Act are incidental to and properly payable out of maintenance funds. Plaintiff strongly contends that his injuries, cause of action, and judgment grew out of the maintenance operations of the District; that they were incidental thereto; and that they can be properly budgeted and paid from maintenance taxes levied with voter

approval either before or after the date of the accident or the date of the judgment. Likewise, the District, in support of its argument that the Legislature is powerless to authorize a "tort claims tax" against it without approval of its voters, argues that "tort debts and tort taxes" are part of either "improvements or maintenance," stating further in its brief: "Manifestly, the meaning of the words 'improvements and maintenance' are so broad that the words include all that these districts may do, and all restrictions upon taxation and the incursion of debts for improvements and maintenance must stand fast."

The District, and others similarly situated, are generally authorized to levy taxes for only two purposes: (1) construction and (2) maintenance. All of the statutes applying to such districts prior to enactment of the present Water Code in 1971 treated the authority for maintenance taxes in a manner broadly enough to cover not only maintenance and operations but any expenses or debts incidental thereto.[2] In *Brown Co. Water Improvement District No. 1 v. Austin Mill & Grain Co., supra,* this Court, with reference to Section 59 of Article XVI, said:

"Looking at said constitutional provision more in detail we find that *Subdivision (a) empowers the Legislature to authorize all such indebtedness as may be necessary to provide all improvements and the maintenance thereof.* Manifestly, the 'indebtedness' which, under this provision, the Legislature may authorize, *means all enforceable obligations which may be incurred, regardless of the conditions of their payment or the time in which they may be payable.* In other words, 'indebtedness,' as here used, has no technical or special meaning, but obviously has a broad significance as covering all debts or obligations created for improvements or maintenance." [Emphasis added.]

---

2. For statutes applying to various conservation and reclamation districts prior to 1971, see Articles 7622–8263h. For provisions of the present statutes, see V.T.C.A., Water Code § 1.001 et seq., Acts 1971, 61st Leg., Ch. 58.

The same broad use of the term "maintenance" was carried forward in the Water Code of 1971. For instance, § 51.352 of the Texas Water Code, applicable to water control and improvement districts, specifically provides that "[t]he maintenance fund shall be used to pay all expenses of maintenance, repairs, and operation of the district except the expenses of assessing and collecting taxes for the interest and sinking fund. . . . the district may pay from the maintenance fund other expenses for which the payment is not provided in this chapter." See also § 51.360 which authorizes, subject to voter approval, "a tax for maintenance purposes, including funds for planning, maintenance, repairing, and operating all necessary plants, properties, facilities and improvements of the district and for paying costs of proper services, engineering and legal fees . . . ."

■ We hold that the negligence of the District's employee in operating its truck while acting within the scope of his employment was incidental to the maintenance activities and operations of the District. The plaintiff is entitled to collect, and the District is authorized to pay, the judgment from maintenance funds derived by the District from any source, including those heretofore or hereafter obtained from any maintenance tax which received voter approval. It follows that the District is entitled to make payments in subsequent fiscal years as provided in Section 11 of Article 6252–19, and that it is authorized in the future to purchase liability insurance from maintenance funds as provided in Section 9 of said Act.

For the reasons stated above, the judgment of the court of civil appeals is affirmed.