Peggy JOHNSON, Individually and as Administratrix of the Estate of Eugene Johnson, and as Next Friend of David Johnson and Jonathan Johnson, Appellant,

v.

JOHNSON COUNTY, Appellee.

No. 10–07–00095–CV.

Court of Appeals of Texas, Waco.

Jan. 30, 2008.

Mark A. Haney, Kobs, Haney & Hundley, LLP, Fort Worth, for appellant.

Thomas P. Brandt, Fanning, Harper & Martinson PC, Dallas, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

TOM GRAY, Chief Justice.

Eugene Johnson hanged himself with the mattress cover in a Johnson County jail cell. Appellant brought suit against Johnson County, and now appeals the trial

court's dismissal of her cause of action. We affirm.[1]

■ In Appellant's one issue, she contends that the trial court erred in granting Johnson County's plea to the jurisdiction, which was premised upon governmental immunity.

■ "Absent an express waiver of its sovereign immunity, the State is generally immune from suit." *State v. Holland*, 221 S.W.3d 639, 643 (Tex.2007); *accord Lowe v. Tex. Tech. Univ.*, 540 S.W.2d 297, 298 (Tex.1976); *Tex. Highway Dep't v. Weber*, 147 Tex. 628, 630, 219 S.W.2d 70, 71 (1949). "In Texas, the bar of sovereign immunity is a creature of the common law and not of any legislative enactment." *Tex. A & M Univ.–Kingsville v. Lawson*, 87 S.W.3d 518, 520 (Tex.2002); *see Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex.2006). "The appurtenant common-law doctrine of governmental immunity similarly protects political subdivisions of the State, including counties...." *Ben Bolt—Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivs. Prop./Cas. Joint Self–Ins. Fund*, 212 S.W.3d 320, 324 (Tex.2006); *see Harris County Flood Control Dist. v. Mihelich*, 525 S.W.2d 506, 508 (Tex.1975). The Supreme Court "ha[s] construed that immunity to deprive the courts of subject matter jurisdiction over suits against the state or its subdivisions." *State v. Shumake*, 199 S.W.3d 279, 283 (Tex.2006) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex.2004)).

"A governmental unit in the state is liable," however, for "death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (Vernon 2005). "Governmental unit" includes counties. *Id.* § 101.001(3)(B) (Vernon 2005).

■ "Appellate courts reviewing a challenge to a trial court's subject matter jurisdiction review the trial court's ruling *de novo.*" *Miranda*, 133 S.W.3d at 228 (citing *Tex. Natural Res. Conserv. Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002)). "When a plea to the jurisdiction challenges the pleadings, ... [w]e construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Miranda* at 226. "[I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised...." *Id.* at 227. "When we consider evidence in this context, 'we take as true all evidence favorable to the nonmovant [*i.e.*, the plaintiff]. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.'" *City of Waco v. Lopez*, 183 S.W.3d 825, 827 (Tex.App.-Waco 2005, pet. granted on other grounds) (quoting *Miranda* at 228) (alteration in *Lopez* ).

■ Johnson County relies primarily on *San Antonio State Hospital v. Cowan. See San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244 (Tex.2004). In *Cowan*, when the decedent was admitted to the hospital, the hospital allowed him to keep his suspenders and walker with him. *Id.* at 245. He used the suspenders and part

---

1. This memorandum opinion is designated an "Opinion" pursuant to Texas Rule of Appellate Procedure 47.4 because the author of a dissenting opinion opposes its designation as a memorandum opinion. *See* Tex.R.App. P. 47.4. That dissenting opinion is then disin-

genuous in its criticism that the "opinion" omits a recitation and discussion of Appellant's pleadings and evidence. Such a recitation and discussion is unnecessary in a memorandum opinion.

of the walker to hang himself. *Id.* The Texas Supreme Court held that the hospital, in providing the decedent with the suspenders and walker, did not use them within the meaning of Section 101.021. "[S]ection 101.021(2) waives immunity for a use of personal property only when the governmental unit is itself the user." *Id.* at 245–46; *Tex. A & M Univ. v. Bishop,* 156 S.W.3d 580, 583 (Tex.2005); *accord LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.,* 835 S.W.2d 49, 51 (Tex.1992). "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Cowan* at 246 (quoting *Beggs v. Tex. Dep't of Mental Health & Mental Retardation,* 496 S.W.2d 252, 254 (Tex.Civ.App.-San Antonio 1973, writ ref'd)); *accord Bishop* at 583. "A governmental unit does not 'use' personal property merely by allowing someone else to use it and nothing more. If all 'use' meant were 'to make available', the statutory restriction would have very little force." *Cowan* at 246; *see Bishop* at 583; *Forgan v. Howard County,* 494 F.3d 518, 521 (5th Cir.2007).[2]

In *Texas A & M University v. Bishop,* similarly, faculty advisers of a drama club or the director of a performance by the club provided a Bowie knife for use in the performance. *Bishop,* 156 S.W.3d at 581–82. In the course of the performance, one student stabbed another with the knife. *Id.* at 582. The Supreme Court held that, that did not constitute a use of the knife by the advisers within the meaning of Section 101.021. *Id.* at 583.

Appellant attempts to distinguish *Cowan. See Cowan,* 128 S.W.3d 244. Appellant argues: "Unlike the state mental hospital" in *Cowan,* "the County did more than simply make available to Eugene his own property by failing to take it away from him. In the present case, the County affirmatively issued Eugene the bedding and locked him into the cell actually used in the suicide." (Br. at 17.) Appellant argues that her case is more similar to that in *Overton Memorial Hospital v. McGuire* than to *Cowan. See Overton Mem'l Hosp. v. McGuire,* 518 S.W.2d 528 (Tex.1975) (per curiam). In *McGuire,* the plaintiff was injured when he fell out of a hospital bed that lacked side rails. *Id.* at 528. But the Supreme Court has held that cases such as *McGuire* "represent 'the outer bounds of what [is] defined as use of tangible personal property,' and ha[s] applied them narrowly...." *Bishop,* 156 S.W.3d at 584 (quoting *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 585 (Tex. 1996)).

Appellant relies primarily on *Martinez v. City of Brownsville,* citing it for the proposition that "jail cell bars used by an inmate to hang himself constituted the use of tangible personal property." (Br. at 13 (citing *Martinez v. City of Brownsville,* No. 13–00–425–CV, 2001 WL 1002399, at *8, 2001 Tex.App. LEXIS 6131, at *23 (Tex.App.-Corpus Christi Aug. 31, 2001, pet. denied) (not designated for publication)).) Assuming that Martinez was correctly decided, it was decided before and is effectively overruled by *Cowan. See Cowan,* 128 S.W.3d 244.

---

**2.** The facts of *Forgan* are strikingly similar to those of this case. *See Forgan,* 494 F.3d at 519. In *Forgan* the decedent used county-issued clothing to hang himself while in jail. *Id.* The plaintiffs brought suit in federal district court under, and the federal court applied, Texas law under *Erie. See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The federal court determined that there was no waiver of immunity under Texas law on the facts of that case. *Forgan* at 520–21. We believe that the federal court correctly interpreted and applied Texas law and, while *Forgan* is not binding precedent, it is certainly persuasive authority.

Johnson County's providing Eugene Johnson with a jail cell and mattress cover is closer to the drama-club advisers' providing students with a knife to use in a production in *Bishop*, or to the hospital's making the patient's suspenders and walker available to him in *Cowan*, than to the hospital's use of a bed to treat a patient in *McGuire*. *See Bishop*, 156 S.W.3d 580; *Cowan*, 128 S.W.3d 244; *McGuire*, 518 S.W.2d 528. Johnson County's incarcerating Eugene Johnson in a jail cell containing a mattress cover did not constitute a use of that property proximately causing his death within the meaning of Civil Practice and Remedies Code Section 101.021. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021. Evidence favorable to Appellant being taken as true, the trial court did not err in granting Johnson County's plea to the jurisdiction and dismissing Appellant's cause of action.[3] We overrule Appellant's issue.

Having overruled Appellant's sole issue, we affirm.

Justice VANCE dissenting.

BILL VANCE, Justice, dissenting.

Although noting the favorable construction we are to give to the plaintiff's pleadings and that we must accept as true all evidence favorable to the plaintiff, the majority opinion then completely omits a recitation and discussion of Appellants' detailed pleadings and ample evidence.

Appellants' evidence shows that in May 2002, after Eugene Johnson's sister-in-law died, he became depressed, was diagnosed with depression, and was treated with anti-depressant medication. Eugene then became paranoid and occasionally harassing toward his wife Peggy. In August 2002, Eugene attempted suicide by overdosing. On September 1, 2002, Peggy visited Deputy Dorsey to report Eugene's erratic and threatening behavior, including his recent suicide attempt. During that visit, Peggy got a call that Eugene was passed out under his car with their children inside it. Peggy told Dorsey, and they both went to the scene. When they arrived, EMTs were already there. Officers Bollin and Watson then arrived, and they arrested Eugene for public intoxication and took him to jail to "sober up." Peggy told the officers that she was afraid Eugene would kill himself and that he had attempted suicide. In response to whether he had ever attempted suicide, Eugene told the officers that he had done so two weeks before. Bollin signed a probable cause affidavit that Eugene was a danger "to himself and others."

Upon arriving at the jail with Eugene, Bollin wrote (in all capitals and underlined), *"SUICIDAL TENDENCIES"*, on the "receiving/screening" form at the jail but did not otherwise communicate Eugene's suicidal tendencies to anyone at the jail. Without first processing any of Eugene's booking information or classifying him for housing based on his condition, Sergeant Prine put Eugene in a holding tank and instructed another officer to dress Eugene in a standard jail uniform and to issue him a standard mattress cover, blanket, and towel. Within thirty minutes, Eugene committed suicide by hanging himself around the neck with a ligature

---

**3.** Appellant also pleaded a cause of action for premises defect. To the extent that Appellant does not attack the independent ground raised in the plea to the jurisdiction as to Appellant's other cause of action, we affirm. *See Fox v. Wardy*, 224 S.W.3d 300, 302 (Tex. App.-El Paso July 28, 2005, pet. denied); *Jua-rez v. Miller*, No. 05–04–01305–CV, 2005 WL 1331650, at *1, 2005 Tex.App. LEXIS 4331, at *2 (Tex.App.-Dallas June 7, 2005, pet. denied) (mem.op.); *Britton v. Tex. Dep't of Crim. Justice*, 95 S.W.3d 676, 680–81 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

made from the mattress cover that he hung over a welded steel frame in his cell.

Appellants' first amended petition alleges, *inter alia,* Johnson County's failures and acts "by placing Eugene Johnson, who was known to be suicidal, in a cell which, by its design, made the means to commit suicide readily available," "by issuing to Eugene Johnson defective clothing and bedding, and placing him in a defective cell at the Jail," and "by issuing to Eugene Johnson and using bedding to house Eugene Johnson and using a privacy partition, both of which were owned by Defendant, which were defective and which lacked integral safety features for the known acute medical condition of Eugene Johnson at the time of his arrest and being taken into custody at the Jail." Appellants further allege:

> The death of Eugene Johnson was occasioned through the use or misuse and/or condition of tangible personal and/or real property of the State of Texas—specifically, through the use or misuse and/or conditions of Jail issued bedding materials and other implements and property of the State of Texas such as the welded steel partition in the Jail cell that housed Eugene Johnson.

> The use of the Jail issued bedding materials and the welded steel partition by employees of Defendant acting within the course and scope of their employment and in furtherance of the duties of their office or employment is the direct and proximate cause of the death by suicide of Eugene Johnson while in custody in jail.

> The Jail issued bedding materials used by Defendant and that caused the death of Eugene Johnson were defective because they were of sufficient strength to support the weight of an inmate who was attempting to commit suicide by hanging.

> The welded steel partition located inside the cell that housed Eugene Johnson was defective because it was of sufficient strength to support the weight of an inmate attempting to commit suicide by hanging.

> . . .

> Defendant . . . used materials such as a mattress cover and blanket to provide bedding to inmates, including Eugene Johnson. These materials were owned by the Defendant. . . . The Defendant put and brought the bedding materials into service and employed them for the specific purpose of providing bedding for the inmates. The Defendant did more than merely make the bedding materials available to Eugene Johnson. The Defendant . . . required Eugene Johnson to use the Jail issued bedding materials and prohibited him from using any other bedding materials even when he was suicidal. The bedding materials which were issued to Eugene Johnson were defective because they lacked an integral safety component. The bedding materials issued to Eugene Johnson should have torn if significant pressure, such as the weight of a potentially suicidal person like Eugene Johnson, was exerted on them e.g. paper sheets. Instead, the bedding materials were made of a material of sufficient strength and size that they could be easily fashioned into a ligature which, if placed around the neck of a suicidal person, could cause injury and death by supporting the weight of the suicidal person. Defendant . . . failed to exercise ordinary care in using the bedding materials that . . . was a proximate cause of the death of Eugene Johnson.

> Defendant . . . used the welded steel privacy partition in Eugene Johnson's cell for the specific purpose of providing privacy to Eugene Johnson. . . . The

welded steel privacy partition was owned by the Defendant.... The Defendant put and brought the welded steel partition into service and employed it for the specific purpose of providing privacy to incarcerated persons ... The welded steel privacy partition located in the cell in which Eugene Johnson was housed lacked an integral safety component because it was of sufficient height and sufficient strength that could be used by suicidal persons as an attachment point for a ligature from which a suicidal person could harm himself. Defendant ... knew of the unreasonable condition, and risk of harm posed by the welded steel privacy partition ... and failed to exercise ordinary care in using the welded steel privacy partition that ... was a direct and proximate cause of the death of Eugene Johnson.

Eugene Johnson was injured and died because the Jail cell in which he was placed was defective. The cell was defective because the cell contained a welded steel privacy partition of sufficient height and sufficient strength that could be used by suicidal persons as an attachment point for a ligature from which a suicidal person could harm himself. As such, the steel partition was an unreasonably dangerous condition of the Jail cell in which Eugene Johnson was placed. The steel partition posed an unreasonable risk of harm in the cell, and the Defendant was aware both of the existence of the steel partition and the danger that the steel partition posed to suicidal inmates.... The defective Jail cell caused Eugene Johnson's injuries and death.... The Defendant ... failed to exercise ordinary care to protect Eugene Johnson from the steel partition and the danger it posed to Eugene Johnson by failing to make the condition reasonably safe.... The Jail cell was a direct and proximate cause of Eugene Johnson's death.

At a minimum, the pleadings and evidence in this case relating to the bedding and the partition fit squarely within the following trilogy of cases in which waiver was found: *Robinson v. Central Tex. MHMR Ctr.*, 780 S.W.2d 169 (Tex.1989) (providing swimming attire to epileptic without a life preserver); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297 (Tex.1976) (providing football uniform without knee brace); and *Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528 (Tex.1975) (providing hospital bed without bed rails). Those cases represent "the outer bounds of what we have defined as use of tangible personal property" and have been applied narrowly only when an integral safety component is entirely lacking rather than merely inadequate. *Texas A & M Univ. v. Bishop*, 156 S.W.3d 580, 585 (Tex.2005) (quoting and citing *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex.1996)). I believe that the pleadings and evidence in this case warrant their application.

I also believe that the pleadings and evidence relating to the use of the bedding and the use and condition of the partition bring this case in line with the following cases: *Dallas County v. Posey*, 239 S.W.3d 336, 341–43 (Tex.App.-Dallas 2007, no pet. h.) (trial court did not err in denying plea to jurisdiction where inmate hanged himself with phone cord in jail cell and plaintiffs pleaded that the condition of the phone cord in the cell was inherently dangerous); *Texas State Tech. College v. Beavers*, 218 S.W.3d 258, 263–67 (Tex.App.-Texarkana 2007, no pet.) (distinguishing *Cowan* and *Bishop* and holding that immunity was waived where college selected and placed into operation engine hoist that student was using when engine slipped and crushed student's hand against hoist); and *Martinez v. City of Brownsville*, 2001 WL

1002399, at *6–11 (Tex.App.-Corpus Christi Aug. 31, 2001, pet. denied) (not designated for publication) (city failed to establish immunity because plaintiffs produced evidence that suicidal inmate hanged himself with his shirt from bars in a regular cell and city's use of regular cell without replacing inmate's clothing with paper garments rendered use of regular cell unsafe). The pleading and the evidence in this case readily distinguish it from *Cowan* and *Bishop.*

Finally, Appellants' pleadings and evidence on the defective condition of the cell are reason alone to find a waiver of sovereign immunity under the Texas Tort Claims Act (TTCA). *See Vela v. City of McAllen,* 894 S.W.2d 836, 840 (Tex.App.-Corpus Christi 1995, no writ) ("use" of booking room and the placement of stool in it was equivalent to the "use" of personal property and officer's negligent use of booking room caused injury to epileptic inmate); *City of Waco v. Hester,* 805 S.W.2d 807, 815 (Tex.App.-Waco 1990, writ denied) (room with steel door in which plaintiff was assaulted and television that guards watched were "used" within meaning of TTCA, and jail's failure to segregate inmate involved use of tangible personal or real property and caused injury); *see also Posey,* 239 S.W.3d at 341–43; *Martinez,* 2001 WL 1002399, at *6–11; *cf. Forgan v. Howard County, Tex.,* 494 F.3d 518, 521 (5th Cir.2007) ("waiver occurs if death or injury results from ... a defective condition of state-issued property, even if actively employed by a third-party at the time of injury," but immunity was not waived because "there is *no allegation* that the trousers were in a defective condition ...") (emphasis added).

Because I would reverse the trial court's ruling and remand this case for further proceedings, I respectfully dissent.

### Response to Footnote 1

Chief Justice Gray charges in the majority opinion (*Ante,* at note 1) that my criticism of the majority opinion's complete omission of a recitation and discussion of Appellants' pleadings and evidence is "disingenuous" because I opposed the designation of the opinion as a memorandum opinion. Those two issues—(1) the omission of Appellants' pleadings and evidence and (2) the improper memorandum opinion designation—are unrelated. In any event, the majority opinion should not be designated as a "memorandum opinion" under the criteria set out in Rule of Appellate Procedure 47.4, and regardless of its designation, any opinion that decides a case on the application of the law to the pleadings and evidence should have at least a minimal discussion of the pleadings and evidence, *especially when the law requires the court to give the plaintiff's pleadings a favorable construction and to accept as true all evidence favorable to the plaintiff.*

Rule 47.4 provides:

*If the issues are settled,* the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it. *An opinion may not be designated a memorandum opinion if the author of a concurrence or dissent opposes that designation.* An opinion must be designated a memorandum opinion *unless* it does any of the following:

(a) establishes a new rule of law, alters or modifies an existing rule, or applies an existing rule to a novel fact situation likely to recur in future cases;

(b) involves issues of constitutional law or other legal issues important to the jurisprudence of Texas;

(c) criticizes existing law; or

(d) resolves an apparent conflict of authority.

TEX.R.APP. P. 47.4 (emphases added).

I strongly disagree that the principal issue in this case—the TTCA's use-of-property requirement—is a "settled" issue. I have noted that "Texas courts have struggled for over two decades with the TTCA's use-of-property requirement." [1] The TTCA's condition-or-use-of-property provision remains unsettled. *Compare Forgan*, 494 F.3d 518 and *Nunez v. City of Sansom Park*, 197 S.W.3d 837 (Tex.App.-Fort Worth 2006, no pet.), *with Posey*, 239 S.W.3d 336; *Beavers*, 218 S.W.3d 258; and *Martinez*, 2001 WL 1002399. As a result, the majority opinion cannot be properly designated as a "memorandum opinion" under Rule 47.4.

Moreover, the majority opinion cannot qualify as a "memorandum opinion" under most of Rule 47.4's excluding criteria:

*(a) establishes a new rule of law, alters or modifies an existing rule, or applies an existing rule to a novel fact situation likely to recur in future cases:* Because the majority opinion omits reciting and discussing Appellants' pleadings and evidence on the defective condition of the cell, the reader is not apprised of the implicit overruling of this court's opinion in *Hester*, 805 S.W.2d at 815 (room with steel door in which plaintiff was assault-ed and television that guards watched were "used" within meaning of TTCA). Also, the majority opinion purports to apply an existing rule (found in *Bishop* and *Cowan*) to a novel fact situation likely to recur—jail inmates committing suicide with state property.

*(b) involves issues of constitutional law or other legal issues important to the jurisprudence of Texas:* Whether sovereign immunity exists for wrongful death claims arising in Texas jails and prisons is—or should be—important to Texas' jurisprudence.

*(c) criticizes existing law [and] (d) resolves an apparent conflict of authority:* The majority opinion attempts to distinguish *McGuire* and concludes that *Cowan* "effectively overruled" *Martinez*.

The majority opinion brazenly states, without authority, that "a recitation and discussion [of Appellant's pleadings and evidence] is unnecessary in a memorandum opinion." While that may be Chief Justice Gray's view, it is not the law.

As I explain above, the majority opinion does not qualify as a memorandum opinion. But even if it did qualify, the complete omission of the pleadings and evidence is not justifiable. Even a memorandum opinion must give the parties "the basic reasons for" the "court's decision." TEX.R.APP. P. 47.4. In a case such

---

**1.** *University of Tex. Med. Branch v. Estate of Blackmon*, 169 S.W.3d 712, 715 (Tex.App.-Waco 2005) (citing *Texas Dep't Crim. Justice v. Miller*, 51 S.W.3d 583, 589 (Tex.2001) ("this Court and its justices have expressed their frustration in trying to draw principled boundaries between 'use' and 'non-use' "); *id.* at 589–91 (Hecht, J., concurring) ("What troubles me gravely is that sixteen decisions from this Court—on the average, one every other year since the Act passed—and hundreds more from the courts of appeals have done so little to infuse the Act's use-of-property standard with meaning that the task now appears hopeless."); *id.* at 593–95 (Enoch, J., dissenting) ("This Court has, on a number of occasions, pleaded with the Legislature to reconsider the waiver section at issue not only because its application is difficult but because its concept seems almost irrational."); *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998) ("The requirement of causation is more than mere involvement, although exactly how much more has been difficult for the courts to define."); *University of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994) (referring to the courts' "long and arduous history" in construing section 101.021(2))), *vacated on other grounds*, 195 S.W.3d 98 (Tex.2006).

as this where the decision turns on Appellants' pleadings and evidence, nary a word of discussion about the pleadings and evidence exists in the majority opinion. All it offers is its summary opening sentence: "Eugene Johnson hanged himself with the mattress cover in a Johnson County jail cell." Meanwhile, Appellants' live petition covers twenty pages in the Clerk's Record, and Appellants' evidentiary response to Johnson County's plea to the jurisdiction and motions for summary judgment contains over two hundred pages of evidence. To comply with Rule 47.4, the majority opinion must provide "the basic reasons" why Appellants' pleadings and evidence do not establish a waiver of sovereign immunity. The majority opinion wholly fails to do this. One must ask "why?"

I conclude with a lengthy quotation from a commentator's article on "principled decisionmaking," [2] and the reader can then decide who is disingenuous:

II. Appellate Advocates Seek an Opinion from the Court That Sets Forth the Facts Essential to the Outcome in a Manner Demonstrating that the Court Correctly Understood the Record.

The factual discussion in an opinion is critical to its acceptance by the parties. *Unless the opinion completely, accurately, and evenhandedly sets forth the facts, it has, in some senses, failed to accomplish the essential functions of an appellate decision.* To the extent that the opinion is intended to and does effectuate the court's law-making function, the breadth of the rule of law the court announces is limited by the factual cir-

cumstances that gave rise to the court's holding. To the extent that the opinion reflects the court's error-correction function, the factual recitation is necessary to demonstrate that the court has read the record with care, is aware of the relevant facts, and has applied the law to those facts. *Justice Jackson long ago recognized that "most contentions of law are won or lost on facts." This is particularly true at the intermediate level, where the appellate court is generally required simply to apply the facts to the law.*

These principles may seem so basic that you wonder why I address them at all. I do so because the time constraints on many appellate courts, particularly at the intermediate level, coupled with a necessary reliance on appellate court staff or law clerks, has led to abbreviated opinions or orders in many jurisdictions. *Most appellate advocates would, I think, join me in urging appellate judges to resist the temptation to shorten the factual recitation too much. But how much is too much? I suggest this rule: If an advocate cannot be sure that the court correctly understood all salient facts, then the factual discussion was insufficient.*

I have heard more than one appellate judge suggest that setting forth too many facts renders the decision more readily subject to attack on appeal. They fear that minor mistakes about facts not material to their holdings will prompt further appellate review, and they conclude that omitting the discussion avoids this possibility. Perhaps. But at what cost? Judge Abrahamson noted that the "judge is constrained by

**2.** "A decision is principled if the ground of the decision can be stated truthfully in a form the judge could publicly avow without inviting strong condemnation by professional opinion." Mary Massaron Ross, *Reflections on Appellate Courts: An Appellate Advocate's Thoughts for Judges*, 8 J.App. Prac. & Process 355, 356 (2006) (quoting Richard A. Posner, The Federal Courts: Challenge and Reform, 312 (2d prtg., Harv. U. Press 1999)).

the facts," because the "facts set the boundaries for decisions." *Discussing those facts in the written opinion serves as a check on the court; it is intended to and does help to ensure that the court has done its job correctly.* To the extent that written opinions dispense with this essential aspect of appellate decisionmaking, a critical tool for ensuring a just result is lost. In this time of scarce judicial resources and ever-increasing time pressures on appellate courts, *the need to accurately set forth facts in the opinion provides the counter-balance necessary to ensure that the time spent was adequate to the task.*

*Appellate advocates understand that a minor error does not necessarily undercut the court's decision and reasoning, but they also believe that a failure to accurately set forth the facts suggests that the court may not have labored long or with much care over their case.* This is always a disappointment. It is also problematic because it lessens the losing party's respect for the process. The absence of a well-written, accurate, and complete factual recitation may cause the losing party to conclude that the case was not fully considered by the court. Litigants sometimes question whether the court understood the facts, particularly in a hard-fought case. *If critical facts are omitted from the opinion, the parties cannot be sure that the court adequately reviewed the record and grasped them correctly.* Moses Lasky, with whose wisdom I began, may have said it best:

> An opinion writer is entitled to the greatest leeway in his law as in his reasoning, for they are his. But honesty allows no leeway in his statement of the facts, for they are not his. There is no substitute whatever for adherence to the exact and precise record in the case. *No "result-orien-*

*tation" can justify omission of a single relevant fact or the inclusion of a single factual statement that is false. This should go without saying. Unfortunately it needs saying.*

Mary Massaron Ross, *Reflections on Appellate Courts: An Appellate Advocate's Thoughts for Judges,* 8 J.APP. PRAC. & PROCESS 355, 358–60 (2006) (footnotes and citations omitted) (emphases added).