

# NUMBER 13-18-00574-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SEAN KIRSTEIN, Appellant,

v.

CITY OF SOUTH PADRE ISLAND, TEXAS, Appellee.

On appeal from the County Court at Law No. 3
of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Chief Justice Contreras**

Appellant Sean Kirstein appeals from a plea to the jurisdiction granted in favor of appellee the City of South Padre Island, Texas (the City). By one issue, Kirstein argues the trial court erred when it granted the City's plea. We affirm.

## I. BACKGROUND

On or about June 29, 2018, Kirstein was arrested for public intoxication and taken to the City's jail. While detained in a cell, Kirstein was attacked by fellow inmate Francisco Ibarra. In his petition, Kirstein argued that the City's "arresting officers and jailers knew or should have known that due to the many prior times they had arrested Mr. Kirstein for alcohol related offenses that he was **unpredictable** and **violent** 'drunk' who needed to be 'observed' and 'segregated' from other prisoners to avoid harm to Mr. Kirstein and to harm others in his close proximity" (emphasis in original). According to Kirstein, the City was negligent because: (1) it lacked adequate facilities for segregating and monitoring inmates such as Ibarra and Kirstein, (2) it failed to immediately transfer either Ibarra or Kirstein to the Cameron County Jail where either could have been "adequately segregated," (3) the City's jailers "failed to follow the written policies and procedures in place at the South Padre Island jail for segregating drunk and aggressive inmates such as" Ibarra and Kirstein, (4) the jailers were "not given any 'jail detention training' at the time they were assigned to duty as 'jailers,'" and (5) "jailers were allowed to watch television at the 'booking desk' thereby taking their attention away from assaults taking place in their jail." Kirstein suffered multiple injuries as a result of Ibarra's attack, including a broken nose, fractured eye socket, fractured wrist, lacerations, bruising, and injuries to spinal discs in his neck and back.

The City filed a plea to the jurisdiction asserting governmental immunity, and Kirstein filed a response in opposition. In his response, Kirstein argued that the City's actions violated the City's jail rules and regulations, which required: "segregation of all potentially dangerous inmates from the general jail population;" "to immediately transfer

either Mr. Ibarra or Mr. Kirstein to the Cameron County Jail where either could have been adequately segregated;" that the jailers receive training "at the time they were assigned;" and that the jailers not "watch television at the 'booking desk' . . . thereby taking their attention away" from the detainees. Kirstein further argued that the City's jail lacked "adequate video and audio monitoring devices of jail cells." Kirstein stated that "his claim arose out of the antecedent negligence of the City's employees" and that "his injuries were proximately caused by negligent actions involving a 'condition or use' of tangible or real property (i.e. a jail)."

The trial court granted the City's plea. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks to dismiss a cause for lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Its purpose is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review the disposition of a jurisdictional plea de novo. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015). The plaintiff has the burden to allege facts that affirmatively demonstrate the trial court's jurisdiction to hear a case. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002). We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam). If the pleadings generate a fact question regarding the jurisdictional issue, a court cannot sustain the plea to the jurisdiction. *Id.* at 927. If

jurisdictional facts are disputed, we consider any evidence submitted by the parties to the trial court. *Blue*, 34 S.W.3d at 555.

## B. Applicable Law

Governmental immunity defeats subject-matter jurisdiction in suits against subdivisions of the State, such as the City, unless that immunity has been clearly and unambiguously waived by the Legislature. *See Sykes*, 136 S.W.3d at 638. Governmental immunity encompasses both immunity from liability and immunity from suit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). The Texas Tort Claims Act (TTCA) waives governmental immunity for "personal injury and death [proximately] caused by a condition or use of tangible personal or real property if the government unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2); *see Miranda*, 133 S.W.3d at 224; *Jefferson County v. Farris*, 569 S.W.3d 814, 823 (Tex. App.—Houston [1st Dist.] 2018, pet. filed) (per curiam). Thus, "[t]o state a claim under the [TTCA], a plaintiff must allege an injury resulting from the 'condition or use of tangible personal or real property.'" *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). "Use" has been defined in the context of the TTCA as "to put or bring into action or service; to employ for or apply to a given purpose." *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001); *Vela v. City of McAllen*, 894 S.W.2d 836, 840 (Tex. App.—Corpus Christi–Edinburg 1995, no writ).

## C. Analysis

By his sole issue, Kirstein argues the trial court erred when it granted the City's plea to the jurisdiction.

First, we address Kirstein's contention that his injuries were caused by the "condition or use" of the City's jail and jail cell because the City lacked adequate facilities to segregate and monitor inmates such as Kirstein and Ibarra. For immunity to be waived under the TTCA, the property must be more than a condition that makes the injury possible. *Dallas Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). In other words, usage of the property itself must have actually caused the injury. *Ordonez v. El Paso County*, 224 S.W.3d 240, 244 (Tex. App.—El Paso 2005, no pet.); *Renteria v. Hous. Auth. of City of El Paso*, 96 S.W.3d 454, 458–59 (Tex. App.—El Paso 2002, pet. denied); *San Antonio State Hosp. v. Koehler*, 981 S.W.2d 32, 35–36 (Tex. App.—San Antonio 1998, pet. denied). The injury must be proximately caused by the condition or use of the property and incidental involvement of the property is insufficient. *See Bossley*, 968 S.W.2d at 343; *Ordonez*, 224 S.W.3d at 244. "Although a room may be part of the context and condition that made a personal injury possible, such a setting without more, cannot satisfy the requirement of proximate cause under the [TTCA]." *Ordonez*, 224 S.W.3d at 244 (citing *Scott v. Prairie View A & M Univ.*, 7 S.W.3d 717, 720 (Tex. App.—Houston 1999, pet. denied)).

Kirstein's claim concerning "real property (i.e., a jail)" does not allege more than mere incidental involvement of the jail and the cell he was placed in, and he has not shown that the condition or use of the jail and holding cell were substantial factors in bringing about his injuries. While not placing Kirstein in the cell with Ibarra may have prevented him from being attacked, the cell or jail itself was not the proximate cause of Kirstein's injuries. *See Hardin Cty. Sheriff's Dep't v. Smith*, 290 S.W.3d 550, 553 (Tex. App.—Beaumont 2009, no pet.) ("Because a jail cell that confines its occupant is

5

operating as intended, its use to confine a person lacks the required causal nexus if the cell merely provides the condition that made a personal injury possible."); *Ordonez*, 224 S.W.3d at 244 (concluding that a holding tank was not the proximate cause of decedent's injuries when decedent was placed in a holding tank with rival gang members and subsequently beaten to death). Accordingly, we reject Kirstein's argument that the City's immunity was waived because the City lacked adequate facilities for segregating and monitoring inmates such as Kirstein and Ibarra.

Next, Kirstein argues that the City's immunity was waived because the it failed to immediately transfer him or Ibarra to the Cameron County Jail. However, this argument also fails because there was no condition or use of real or personal property by the City which allegedly caused Kirstein's injuries. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2); *Bossley*, 968 S.W.2d at 343; *Smith*, 290 S.W.3d at 553; *Ordonez*, 224 S.W.3d at 244; *Koehler*, 981 S.W.2d 32, 35–36; *see also Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001) (noting that failure to use or the non-use of property does not waive sovereign immunity under the TTCA). Thus, we reject this argument.

Kirstein also argues that the City's immunity was waived because it was negligent in not providing jailers any "jail detention training" at the time they were assigned as jailers and because the "jailers failed to follow the guidelines they were taught in their training courses paid for by the City of South Padre Island . . . ." "We have long held that information is not tangible personal property, since it is an abstract concept that lacks corporeal, physical, or palpable qualities." *Petta*, 44 S.W.3d at 580. "[S]imply reducing information to writing on paper does not make the information 'tangible personal

6

property.'" *Id.* "[W]hile instructional manuals can be seen and touched, the Legislature has not waived immunity for negligence involving the use, misuse, or non-use of the information they contain." *Id.* at 581. Because written information in the form of instructions and manuals is not tangible personal property, we conclude that the information contained in the City's policy and training manuals does not give rise to a claim under the TTCA. *See id.* We also reject Kirstein's argument that the City's immunity was waived due to a lack of training because this argument does not involve a condition or use of personal or real property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).

Finally, Kirstein presents various arguments regarding the City's negligent implementation of policies and regulations in support of his contention that the City's immunity was waived. The TTCA waives sovereign immunity for the negligent *implementation* of a formulated discretionary policy, although immunity is not waived for the negligent *formulation* of a discretionary policy,[1] so long as the plaintiff suffers injury meeting the requirements in § 101.021(2)—i.e., that the injury be caused by a condition or use of real or personal property. *Petta*, 44 S.W.3d at 580 ("We have also said . . . that the Tort Claims Act waives sovereign immunity from suit for claims that an officer negligently carried out governmental policy."); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995); *Nueces County v. Ferguson*, 97 S.W.3d 205, 223 (Tex. App.— Corpus Christi–Edinburg 2002, no pet.) ("Since Ferguson did not assert any claim that

---

[1] While discretionary policy decisions are exempt from TTCA waivers, decisions and actions at the operational level are not. *State v. Terrell,* 588 S.W.2d 784, 787–88 (Tex. 1979). This distinction prevents judicial review of policy decisions while allowing for liability for the negligent carrying out of any policy decision made. *Id.* at 788. Thus, for example, the decision by a governmental unit whether and how to detect speeding individuals is not reviewable, but once a policy is enacted that speeding individuals will be detected, damages arising out of the negligent implementation of such policy can subject the governmental unit to liability. *Id.*; *see also City of Mission v. Cantu*, 89 S.W.3d 795, 812–13 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.).

fell within the scope of § 101.021 of the tort claims act, the theory of negligent implementation liability does not arise in this case."); *Guadalupe-Blanco River Auth. v. Pitonyak*, 84 S.W.3d 326, 342 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (reasoning that an assertion of the negligent implementation theory of liability arises only after a plaintiff has established a waiver of immunity under § 101.021 of the TTCA); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). Furthermore, "[t]o state a negligent implementation claim, a plaintiff must identify a particular policy adopted by the governmental unit and state facts which raise a claim that the policy was negligently carried out at the operational level." *Ferguson*, 97 S.W.3d at 223; *see Tarrant Cty. Water Control & Improvement Dist. No. 1 v. Crossland*, 781 S.W.2d 427, 433 (Tex. App.—Fort Worth 1989, writ denied) (concluding that allegation of a general policy to warn of danger did not make the State liable for the particular decision to design a bridge without lights).

Kirstein alleges the City was negligent in the implementation of the following: (1) jail rules and regulations requiring the segregation of all potentially dangerous inmates from the general jail population and (2) jail rules and regulations requiring immediate transfer to the Cameron County jail of potentially dangerous inmates. Kirstein also argued that (3) the jailers were "allowed to watch television at the 'booking desk' at the time of Mr. Kirstein's incarceration thereby taking their attention away from [the] violent assault by Mr. Ibarra taking place in their jail[,] in violation of the [City's] jail rules and regulations."

As previously concluded, Kirstein's claims regarding the implementation of jail rules and regulations requiring (1) the immediate transfer to Cameron County jail of potentially dangerous inmates and (2) the segregation of all potentially dangerous inmates fail because there was no condition or use of real or personal property on behalf

8

of the City that was the proximate cause of Kirstein's injuries. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2); *Miller*, 51 S.W.3d at 587; *Bossley*, 968 S.W.2d at 343. Thus, we are left with Kirstein's claim that the jailers were allowed to watch television at the booking desk in violation of the City's jail rules and regulations.

Kirstein relies heavily and puts great emphasis on *City of Waco v. Hester* in support of his contention that the City's immunity was waived due to negligent implementation of the City's policies and regulations. *See* 805 S.W.2d 807, 812–13, 815 (Tex. App.—Waco 1990, writ denied). *Hester* involved an appeal from a jury verdict in favor of a former inmate who sued the city of Waco and its police chief under the TTCA after being sexually assaulted by another inmate in jail. *Id.* at 809–10. In *Hester*, a jury determined that the City's negligent implementation of policies concerning the use of tangible personal or real property proximately caused Hester injuries. *Id.* at 813. Hester introduced into evidence the City's written policies which required jail personnel to protect inmates from harm and to segregate inmates known to be dangerous or homosexual for purposes of control, discipline, or health reasons. *See id.* at 812. Hester alleged that: (1) the City's officers and jailers either knew or should have known of the aggressor's violent and homosexual tendencies, (2) the jail lacked adequate facilities for segregating inmates, (3) the City failed to transfer the aggressor to the county jail where he could be adequately segregated, (4) the jail lacked adequate facilities for monitoring inmates, (5) jailers were allowed to watch commercial television at the "booking desk", (6) jailers were not given any training before being assigned to duty, and (7) jailers were warned prior to the assault that the aggressor was intimidating Hester but they ignored the warning. *Id.* at 812–13. The Waco court affirmed the jury's verdict and concluded that there was legally and

factually sufficient evidence for the jury to have found that the property "used" in that case was the room in which the attack took place, the closed steel door that deterred proper surveillance, and the television set the guards were known to occasionally watch instead of the surveillance monitors. *Id.* at 815.

The factual allegations in *Hester* are nearly identical to the ones brought by Kirstein. However, as previously discussed, several of the arguments brought forth in *Hester* now fail due to subsequent precedent established by the Texas Supreme Court. *See Petta*, 44 S.W.3d at 580; *Bossley*, 968 S.W.2d at 343. We further note that *Hester* has been criticized by several of our sister courts. *See Ordonez*, 224 S.W.3d at 245 (concluding that *Hester* does not hold that the negligent implementation of policy is sufficient, standing alone, to waive immunity and that appellant did not show that the condition or use of the jail's holding tank was a substantial factor in bringing inmate's injuries); *Tarrant Cty. Hosp. Dist. v. Henry*, 52 S.W.3d 434, 442 n.23 (Tex. App.—Fort Worth 2001, no pet.) (declining to follow *Hester* because it did not consider "whether [Hester] alleged sufficient facts to state a negligence claim based on a condition or use of property under § 101.021(2)"); *Scott*, 7 S.W.3d at 720 (disagreeing with the reasoning in *Hester* and stating that the cell and door in *Hester* were not defective and too attenuated from the actual injury to be considered the proximate cause of Hester's injury); *Laman v. Big Spring State Hosp.*, 970 S.W.2d 670, 672 (Tex. App.—Eastland 1998, pet. denied) (refusing to follow *Hester* to the extent it holds that a room is personalty or that a cause of action will lie for the negligent use of real property and noting that *Hester* is better supported by the court's reasoning that the television set was tangible personal property), *disapproved on other grounds by Mansions in the Forest, L.P. v. Montgomery County*,

10

365 S.W.3d 314, 317 (Tex. 2012). Furthermore, the discussion in *Hester* cited by Kirstein analyzed whether there was factually sufficient evidence supporting the jury's finding, not whether immunity had been waived under § 101.021(2) of the TTCA. *See Henry*, 52 S.W.3d at 442 n.43; *Hester*, 805 S.W.2d at 813–15. Two of our sister courts, though, have hinted or stated that a plausible reasoning behind the conclusion in *Hester* was that the television set was tangible personal property that was used by the City of Waco. *See Scott*, 7 S.W.3d at 720; *Laman*, 970 S.W.2d at 671–72. Nevertheless, as discussed below, we conclude that *Hester* does not support the conclusion that the use of the television here was the proximate cause of Kirstein's injuries and, thus, the City's immunity was not waived.

"Section 101.021(2) requires that for immunity to be waived, personal injury or death must be proximately caused by the condition or use of tangible property." *Bossley*, 968 S.W.3d at 343. Proximate cause requires some nexus between the use of the property and the plaintiff's injury. *Dallas County v. Posey*, 290 S.W.3d 869, 872 (Tex. 2009); *see City of Dallas v. Sanchez*, 494 S.W.3d 722, 726 (Tex. 2016). The components of proximate cause are (1) cause-in-fact and (2) foreseeability. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005); *HIS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

The test for cause-in-fact is whether the negligent act was a substantial factor in bringing about injury and whether the injury would have occurred without the act or omission. *Del Lago Partners v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010); *Western Invs.*, 162 S.W.3d 551. Cause-in-fact must be proved by evidence of probative force—either direct or circumstantial—and not by mere conjecture, guess, or speculation. *Excel Corp.*

11

*v. Apodaca*, 81 S.W.3d 817, 820 (Tex. 2002); *see Western Invs.*, 162 S.W.3d at 551. There is no cause-in-fact when the defendant's negligent conduct is too remotely connected with the plaintiff's injury. *Mason*, 143 S.W.3d at 799 (noting that "the conduct of the defendant may be too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm"); *Doe v. Boys Club*, 907 S.W.2d 472, 477 (Tex. 1995). An event that starts a chain of events can be too attenuated from an injury to cause it. *Curnel v. Hous. Methodist Hosp.-Willowbrook*, 562 S.W.3d 553, 565 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Thus, proof that personal property was merely involved in the claim, without more, does not satisfy the causation requirement under the TTCA. *Posey*, 290 S.W.3d at 872; *Bossley,* 968 S.W.2d at 343; *Miller*, 51 S.W.3d at 587. Instead, "[u]sing that property must have actually caused the injury." *Miller*, 51 S.W.3d at 588 (citing *White*, 46 S.W.3d at 869).

Here, the use of the television by the jailers at the desk was not the cause-in-fact of Kirstein's injuries because the use of the television by the jailers is too attenuated from the injuries. *See Miller*, 51 S.W.3d at 588; *Curnel*, 562 S.W.3d at 565; *Spindletop MHMR Ctr. v. Beauchamp ex. rel. Humphrey*, 130 S.W.3d 368, 372 (Tex. App.—Beaumont 2004, pet. denied); *Gainesville Mem'l Hosp. v. Tomlinson*, 48 S.W.3d 511, 512–13 (Tex. App.— Fort Worth 2001, pet. denied). First, according to Kirstein's argument, the use of the television kept the jailers from supervising the inmates. The failure to supervise was an earlier link in the causation chain, and failure to supervise does not waive immunity under the TTCA as it does not involve the use or condition of real or personal property. *See Tex. S. Univ. v. Mouton*, 541 S.W.3d 908, 914 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("We initially note that a failure to supervise or provide security, standing alone, is a

12

failure to act, not a condition or use of property waiving liability under the Act."); *Archibeque v. N. Tex. State Hosp.-Wichita Falls Campus*, 115 S.W.3d 154, 160 (Tex. App.—Fort Worth 2003, no pet.) (concluding that a claim for failure to monitor patient did not fall under TTCA's property waiver because "[t]he nonuse of property cannot support a claim under the Act"); *Austin Indep. Sch. Dist. v. Gutierrez*, 54 S.W.3d 860, 863 (Tex. App.—Austin 2001, pet. denied) ("If the [school bus driver's] act involved only supervision or control [of children passengers], immunity has not been waived . . . ."). A second link in the chain of causation between the jailers' use of the television and Kirstein's injuries is Ibarra. These two links in the causation chain indicate that the use of the television by the jailers is too attenuated from Kirstein's injuries to be their cause-in-fact. *See Curnel*, 562 S.W.3d at 565; *see also Bossley*, 968 S.W.2d at 343. Thus, the use of the television by the jailers was not the proximate cause of Kirstein's injuries. *See Miller*, 51 S.W.3d at 588; *Humphrey*, 130 S.W.3d at 372; *Tomlinson*, 48 S.W.3d at 512–13; *Hendrix v. Bexar Cty. Hosp. Dist.*, 31 S.W.3d 661, 663 (Tex. App.—San Antonio 2000, pet. denied); *see also Bossley*, 968 S.W.2d at 343. Accordingly, we reject Kirstein's reliance on *Hester* and conclude that, under the facts of this case, the use of the television by the jailers and the jailers' failure to supervise Ibarra and Kirstein did not waive the City's immunity under the TTCA.[2]

---

[2] Kirstein also cites and relies on an unpublished opinion of this Court. *See Martinez v. City of Brownsville*, No. 13-00-00425-CV, 2001 WL 1002399, at *7–11 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2001, pet. denied) (not designated for publication). However, *Martinez* was decided before and is inconsistent with the Texas Supreme Court decisions in *San Antonio State Hospital v. Cowan* and *Dallas County v. Posey. Rogge v. City of Richmond*, 506 S.W.3d 570, 577 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see Dallas County v. Posey*, 290 S.W.3d 869, 871–72 (Tex. 2009) (per curiam); *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004); *Johnson v. Johnson County*, 251 S.W.3d 107, 110 (Tex. App.—Waco 2008, pet. denied). We follow the precedent the Texas Supreme Court has established. *See McAllen Hosps., L.P. v. Gonzalez*, 566 S.W.3d 451, 457 n.2 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.).

13

We overrule Kirstein's sole issue.

### III.  CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Delivered and filed the 5th
day of September, 2019.